**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                          :
KARRY JOHNSON                             :
O/B/O TYSHAWN JOHNSON,                     :
                                          :
       Plaintiff,                 :       Civil Action No. 08-04752 (JAG)
                                          :
          v.             :       **OPINION**
                                          :
COMMISSIONER OF SOCIAL                    :
SECURITY,                                 :
                                          :
       Defendant.                 :
_____:


**GREENAWAY, JR., U.S.D.J.**

This matter comes before this Court on appeal, pursuant to 42 U.S.C. 405(g),[1] by

plaintiff, Karry Johnson ("Plaintiff"), on behalf of her minor child, Tyshawn Johnson

("Claimant"). Plaintiff seeks review of a final determination by the Commissioner of Social

Security ("Commissioner") denying child Supplemental Security Income ("SSI")[2] benefits.

_____

[1]  This section of the Social Security Act ("Act") provides for judicial review by civil action after a hearing to which the individual was a party and there was a final decision by the Commissioner. 42 U.S.C. § 405(g). The civil action must be commenced within sixty days after the mailing of the notice of such final decision, and the action shall be brought in the judicial district where the plaintiff resides. Id.

[2]  The Act provides for SSI benefits for children under 42 U.S.C. § 1382c(a)(3)(C)(i):

    An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last

Plaintiff argues that the Commissioner's decision errs in its consideration of medical equivalence and functional equivalence.  (Br. in Support of Pl. Karry Johnson o/b/o T.J., a minor [hereinafter "Pl.'s Br."] 6).  Plaintiff requests that this Court reverse the Commissioner's decision  and order payment of SSI benefits or, in the alternative, remand this matter to the Commissioner because the Commissioner's decision is not supported by substantial evidence.  (Pl.'s Br. 5-6.)  Plaintiff also seeks a new hearing.  (Id.)  This Court finds that the Commissioner's decision is supported by substantial evidence and the decision shall be affirmed for the reasons set forth in this opinion.

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI benefits on April 27, 2005 on behalf of Claimant, alleging that Claimant was disabled under the Act.  (Pl.'s Br. 2.)  Plaintiff's application (Tr. 35)[3] and request for reconsideration (id. at 42) were both denied.  A request for a hearing by an ALJ was made on March 24, 2006 (id. at 46) and a hearing was scheduled for July 25, 2007 (id. at 28).

On July 25, 2007, Administrative Law Judge Dennis O'Leary ("ALJ O'Leary" or "ALJ") held a hearing at which both Plaintiff and Claimant appeared, represented by their attorney, and ALJ O'Leary reviewed the SSI application de novo.  (Id. at 146-69.)  ALJ O'Leary issued his decision on September 17, 2007, finding that Claimant was not disabled within the meaning of

---

for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

[3] "Tr." refers to the transcript of the administrative record filed by the Commissioner, as part of his answer, pursuant to 42 U.S.C. § 405(g).

the Act, and thus Claimant was unable to collect SSI benefits.  (Id. at 17-27.)  The following is a

summary of the ALJ's findings:

1.  The claimant was born on April 11, 1992.  Therefore, he was an adolescent on April 27, 2005, the date the application was filed, and is currently an adolescent (20 C.F.R. [§] 416.926(g)(2)).  (Tr. 20.)

2.  The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. [§§] 416.924(b) and 416.972). (Tr. 20.)

3.  The claimant has the following severe impairments: attention hyperactivity disorder[4] and a behavior disorder[5] (20 C.F.R. [§] 416.924(c)).  (Tr. 20.)

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. [§§] 416.924, 416.925 and 416.926)).  (Tr. 20.)

5.  The claimant does not have an impairment or combination of impairments that functionally equals one of the listings (20 C.F.R. [§§] 416.924(d) and 416.926a).  (Tr. 20.)

6.  The claimant has not been disabled, as defined in the Social Security Act, since April 27, 2005, the date the application was filed (20 C.F.R. [§] 416.924(a)).  (Tr. 27.)

Based on the above findings, the ALJ concluded that Claimant was not disabled, as defined by

the Act, since the date of the application and is not entitled to SSI benefit payments.  (Tr. 17.)

On November 20, 2007, Plaintiff applied for review of ALJ O'Leary's decision before the

Social Security Administration Appeals Council ("Appeals Council").  (Id. at 13.)  On July 24,

2008, the Appeals Council denied the request for review of the ALJ's decision, finding the ALJ's

---

[4]  Attention deficit hyperactivity disorder ("ADHD") is defined as "a childhood mental disorder with onset before 7 years of age and involving impaired or diminished attention, impulsivity, and hyperactivity."  MOSBY'S MEDICAL, NURSING, & ALLIED HEALTH DICTIONARY 157 (6th ed. 2002).

[5]  Behavior disorder is defined as "any group of antisocial behavior patterns occurring primarily in children and adolescents, such as overaggressiveness, overactivity, destructiveness, cruelty, truancy, lying, disobedience, perverse sexual activity, criminality, alcoholism, and drug addiction."  Id. at 191.

decision to be the final decision of the Commissioner in this case.  (Id. at 5.)  Subsequently,

Plaintiff filed the instant action, seeking reversal or, in the alternative, remand of the

Commissioner's final decision pursuant to 42 U.S.C. § 1383(c)(3).  (Compl. 2-3.)

## STATEMENT OF THE FACTS

A.     **SSI Benefits Application Evidence, Prior to ALJ hearing**

As part of Plaintiff's initial application for SSI benefits, Plaintiff filled out a "Function

Report."  (Id. at 57-65.)  Plaintiff indicated that Claimant's daily activities were not limited and

Claimant was not limited in understanding or using what he learned.  (Id. at 60-61.)  Plaintiff did

indicate Claimant's impairment affected his social activities or behavior with other people in that

he had no friends of his own, could not make new friends, did not get along with parent or adults,

did not get along with siblings, did not get along with teachers, and did not play team sports.[6]

(Id. at 62.)  Interestingly, Plaintiff also stated in the Function Report, that Claimant's ability to

pay attention and stick with a task was not limited.  (Id. at 64.)

In a Child's Questionnaire form filled out by Plaintiff prior to the ALJ hearing, Plaintiff

indicated that Claimant was "disrespectful and violent at times.  But with the medication he's

manageable."  (Id. at 100.)  Plaintiff also indicated that "[Claimant] is verbally abusive towards

others and it sometimes leads him to physical altercations, but while on the medication he's more

rational."  (Id.)  Finally, Plaintiff noted that Claimant's behavior interfered with his ability to do

work in school.  (Id. at 101.)

---

[6]  At the hearing, Claimant testified that he was enrolled in a basketball summer camp
program.  (Tr. 165.)  Claimant testified that  he had a few friends but did not see them often
during this summer because he was enrolled in the basketball summer camp program.  (Id.)
Claimant noted that he only saw friends when he went outside.  (Id.)

In June of 2005, Claimant's teacher filled out a Teacher Questionnaire for the Social Security Administration ("SSA").  (Id. at 102-09.)  This questionnaire allowed Claimant's teacher to "compare [Claimant's] functioning to that of same-age children who do not have impairments."  (Id. at 102.)   The teacher found that Claimant had no problem, or only slight problems, acquiring and using information.  (Id. at 103.)  Regarding attending and completing tasks, the teacher found that Claimant had a slight to serious problems.  (Id. at 104.)  Claimant's serious problems were in the areas of focusing long enough to complete an assigned task, refocusing to the task when necessary, and working without distracting self or others.  (Id.)  The teacher noted that Claimant had slight to very serious problems, with regard to interacting and relating with others.  (Id. at 105.)  Claimant had serious problems seeking attention appropriately, asking permission appropriately, following rules, and taking turns in conversation.  (Id.)  Claimant had very serious problems in expressing anger appropriately, respecting and obeying adults in authority, introducing and maintaining relevant and appropriate topics of conversation, and using adequate vocabulary and grammar to express everyday ideas and thoughts.  (Id.)

On the other hand, the teacher noted Claimant had only slight problems playing cooperatively and making and keeping friends.  (Id.)  In the area of moving about and manipulating objects, the teacher noted that Claimant had slight to serious problems.  (Id. at 106.)  Claimant had serious problems demonstrating strength, coordination, and dexterity in activities or tasks.  (Id.)  Finally, in caring for himself, the teacher indicated that Claimant had no problems, slight problems, and obvious problems.   (Id. at 107.)  The teacher noted obvious problems in appropriately handling frustration, identifying and appropriately asserting emotional

5

needs, responding appropriately to changes in one's own mood, and knowing when to ask for help.  (Id.)

## B.   **Medical Evidence**

### 1.   **Dr. Cavanaugh - Consultative Exams**

Claimant has had three psychological examinations—two at thirteen years old and one at fifteen years old.  In August 2005, Dr. Jan S. Cavanaugh of Industrial Medicine Associates, P.A. conducted a consultative examination.[7]  (Id. at 110-13.)  Dr. Cavanaugh noted that Claimant's speech was clear but "expressive and receptive language was not age appropriate; [Claimant's] skills [were] more like an 8 years [sic] old." (Id. at 111.)  The doctor noted that Claimant's intellectual functioning was below average range and he had a limited "general fund of information."  (Id. at 112.)

 The doctor also found the following:

> Regarding the daily functioning of the claimant, he appears to be limited in
> attending to, following, and understanding age appropriate directions.  He appears
> to be limited in completing age appropriate tasks.  He seems to be limited in
> adequately maintaining appropriate social behavior.  He gave the impression that
> he is limited in responding appropriately to changes in the environment; learning
> at his level of cognitive functioning; and limited in asking questions and
> requesting assistance in an age appropriate manner.  He appears to be unable to be
> aware of dangers and take precautions in an age appropriate manner.  He seems
> limited in interacting adequately with peers and adults.

(Id. at 112-13.)  Dr. Cavanaugh diagnosed Claimant with ADHD and concluded that the examination results were consistent with the allegations.  (Id. at 113.)  Claimant's prognosis was "guarded[]" and Dr. Cavanaugh hoped "that with continued intervention and support[] [Claimant

---

[7]  "A consultative examination is a physical or mental examination or test purchased for [a claimant] at [SSA's] request and expense from a treating source or another medical source, including a pediatrician when appropriate."  20 C.F.R. § 416.919.

would] find symptom relief and maximize his abilities."  (Id.)  Finally, the doctor recommended that Claimant continue with psychological and psychiatric treatment and with the current educational placement.  (Id.)

Dr. Cavanaugh examined Claimant again in February 2006 when Claimant was in the seventh grade.  (Id. at 120-25.)  Claimant's academic performance was poor, although his teachers said he could do better.  (Id. at 120.)  Dr. Cavanaugh reported that Claimant was in treatment with Dr. Chang at Trinitas Hospital and was prescribed Concerta[8] medication.  (Id.)  Dr. Cavanaugh reported that Claimant lost his temper easily, refused to comply with adults and had attention, concentration and hyperactivity symptoms.  (Id. at 121.)

At this examination, Dr. Cavanaugh reported that Claimant's demeanor and responsiveness to questions was "a combination of poor cooperation, resistance, and a seemingly deliberate attempt to annoy the examiner."  (Id. at 122.)  The doctor also noted that Claimant responded to questions jokingly or deliberately and gave incorrect answers, seemingly to annoy his mother.  (Id.)  Also, it was noted that Claimant's overall presentation at the examination "seemed [like] a very conscious attempt to make fun of the situation that he was in."  (Id.)  Finally, the doctor noted that Claimant was hyperactive throughout the examination.  (Id.)

Dr. Cavanaugh noted that his cognitive functioning was average or low average range and "he may be brighter if he were to allow himself to focus and concentrate."  (Id. at 123.)  At the conclusion of this examination, the doctor found that "the present examination appear[ed] to be

---

[8]  Concerta is "indicated for the treatment of . . . ADHD. . . . [and] is indicated as an integral part of a total treatment program for ADHD." Physicians' Desk Reference, available at 2003 WL 24114158 [hereinafter "PDR"].

consistent with psychiatric problems, but in itself, this does not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." (Id. at 124.)  Dr. Cavanaugh diagnosed Claimant with oppositional defiant disorder[9] and ADHD and recommended that Claimant maintain his current academic and psychiatric treatments and if problems persisted such treatments should be "stepped up." (Id.)  The doctor gave Claimant a fair prognosis, assuming continued treatment. (Id.)

### 2.    Dr. Chang - Trinitas Hospital Exam

Claimant was also referred to Dr. Luke Chang by his school due to his behavior at home and in school. (Id. 133-37.)  This examination took place in June 2007, when Claimant was fifteen years old and repeating the seventh grade in the regular class. (Id. at 133.)  Plaintiff told Dr. Chang that Claimant was without medication for a year, or longer, and he was having more problems. (Id.)  Plaintiff also told Dr. Chang that Claimant was repeating the seventh grade. (Id. at 134.)

---

[9]  Oppositional defiant disorder is described as:

a recurrent pattern of negativistic, defiant, disobedient, and hostile behavior toward authority figures that persists for at least [six] months . . . and is characterized by the frequent occurrence of at least four of the following behaviors: losing temper . . . , arguing with adults . . . , actively defying or refusing to comply with the requests or rules of adults . . . , deliberately doing things that will annoy other people . . . , blaming others for his or her own mistakes or misbehavior . . ., being touchy or easily annoyed by others . . . , being angry and resentful . . . , or being spiteful or vindictive.

Diagnostic and Statistical Manual of Mental Disorders 100 (4th ed. 2000) [hereinafter "DSM-IV"].

8

Dr. Chang reviewed the history of Claimant's present disorder finding that when Claimant was diagnosed with ADHD in the second grade, he was prescribed Ritalin.[10]  (Id.) However, due to an allegation of child neglect, the Division of Youth and Family Services became involved, and Claimant moved in with his grandmother who did not provide Claimant with medication.  (Id.)  Claimant returned to live with Plaintiff in the fifth grade and was again taken to the outpatient facility where Concerta was prescribed and Claimant improved.  (Id.) However, Plaintiff noted that Claimant had been on and off of medication while in the sixth grade, and was without medication for the year prior to the instant examination.  (Id.)  In terms of Claimant's education, Plaintiff told Dr. Chang that while Claimant was in the sixth grade, he was enrolled in an alternative program.  (Id.)

Dr. Chang noted the following: Claimant was calm and not cooperative; had decreased verbal output and speech was in a low volume; Claimant was of "average intelligence with fair concentration and impulse control;" and Claimant's insight and judgment were limited.  (Id. at 135-36.)  Claimant was diagnosed with ADHD and conduct disorder.[11]  (Id. at 136.)  Dr. Chang noted that the mother was supportive, but there was noncompliance with treatment in Claimant's

---

[10]    Ritalin is prescribed for the treatment of ADHD.  PDR, available at 2003 WL 24114713.

[11]  Conduct disorder is described as:

a repetitive and persistent pattern of behavior in which the basic rights of others or major age-appropriate societal norms or rules are violated . . . .  These behaviors fall into four main groupings: aggressive conduct that causes or threatens physical harm to other people or animals . . . , nonaggressive conduct that causes property loss or damage . . . , deceitfulness or theft . . . , and serious violations of rules.

DSM-IV at 93-94.

past.  (Id. at 137.)  Dr. Chang recommended that Claimant be referred to group counseling and prescribed Concerta.  (Id.)

C.  **Testimonial Evidence**

At the hearing, Plaintiff appeared as a witness on Claimant's behalf.  (Id. at 144.) Plaintiff testified that Claimant was enrolled in an alternative school due to his behavior.  (Id. at 152.)  In order to complete his assignments, he was separated from other students so that he would not distract them or himself.  (Id.)  Plaintiff also testified that Claimant, at the time of the hearing, would be left back for a third time and would be enrolled in the seventh grade in that coming school term.  (Id. at 154.)  Plaintiff testified that Claimant only kept still for a little while and then was "up doing something" after a short period.  (Id. at 156.)  Upon questioning by the ALJ, Plaintiff stated that she thought Claimant was attending school on time, but he was often late.  (Id. at 157.)  Plaintiff also did not know what school or class Claimant would be attending for the coming school year.  (Id. at 160.)

Claimant testified that he did not find the school work difficult, but is frequently late or absent and he is repeating the seventh grade due to those absences.  (Id. at 161-62.)  Claimant also testified to waking up late for school, missing the bus and having to walk.  (Id. at 163.) Claimant stated that he was often late to school because he would stop at his aunt's house on the way to school because he was tired and went to sleep late.  (Id. at 163-64.)  Upon questioning by the ALJ, Claimant testified that when he missed school, he would stay home and play video games, sleep, watch television, and listen to music.  (Id. at 164-65)  Claimant also testified to attending and participating in a basketball summer camp.  (Id. at 165.)

## DISCUSSION

### A.    Standard of Review

This Court has jurisdiction to review the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).  This Court must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Stunkard v. Sec'y of Health and Human Services, 841 F.2d 57, 59 (3d Cir. 1988); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986).  See Jones v. Barnhart, 364 F.3d 501, 502-03 (2004) ("The role of this [appellate] [c]ourt is identical to that of the [d]istrict [c]ourt; we must determine whether there is substantial evidence to support the Commissioner's decision.") (citing Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance."  Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988) (citing Stunkard, 841 F.2d at 59).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision.  See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).  Furthermore, the reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

In reviewing final determinations by the Commissioner, this Court is bound to the findings of fact of the Commissioner if such findings are supported by "substantial evidence." 42 U.S.C. § 405(g) (2004).  The Third Circuit has further refined this evidentiary standard:

> This oft-cited language [describing the standard of substantial evidence] is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence vel non of substantial evidence is not merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence -- particularly certain kinds of evidence (e.g., that offered by treating physicians) -- or if it really constitutes not evidence but mere conclusion. . . . The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  Thus, if the explanation of an ALJ's decision is "hopelessly inadequate," the case should be vacated and remanded to the ALJ to develop fully the record and to explain the findings.  Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 120 (3d Cir. 2000); see also Garcia v. Comm'r of Soc. Sec., 260 F. App'x 436, 437 (3d Cir. 2008) (applying the Burnett requirement for the ALJ to fully develop the record and explain findings in a child SSI benefits case).  Furthermore, if there is a dispute between evidence in the record, the case must be remanded for additional factual findings.  Burnett, 220 F.3d at 126.  "A reversal, as opposed to a remand, is in order only where a fully developed administrative record demonstrates that the claimant is clearly entitled to benefits, and thus a new administrative hearing would serve no useful purpose."  Podedworny v. Harris, 745 F.2d 210, 224 (3d Cir. 1984).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by the claimant and corroborated by family and neighbors; (4) the claimant's educational background, work history and present age." Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1973); Curtin v. Harris, 508 F. Supp. 791, 793 (D.N.J. 1981). Where there is substantial evidence to support the Commissioner's decision, it is of no consequence that the record contains evidence which may also support a different conclusion.  Blalock, 483 F.2d at 775.

**B.** **Statutory Standards**

The claimant bears the initial burden of establishing his or her disability.  42 U.S.C. § 423(d)(5).  To qualify for SSI benefits, a claimant must first establish that he is needy and aged, blind, or "disabled."  42 U.S.C. § 1381.  A child claimant is disabled if he or she is under the age of eighteen and, "has a medically determinable physical or mental impairment, which results in . . .  marked and severe functional limitations, and which can be expected to result in death or which ha[ve] lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).   While subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  An impairment only qualifies as a disability if it "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

13

**C.**    **Weight Accorded to Evidence**

The Commissioner considers all submitted opinions to evaluate a claim for disability benefits.  If the medical evidence presented is inconsistent, then the evidence will be weighed in order to reach a decision.  See 20 C.F.R. § 416.927(c)(2).  The highest quantum of weight is accorded to medical opinions of the treating physicians.  In reviewing a decision by the Commissioner, "a court gives greater weight to the findings of a treating physician than to the findings of a physician who has examined a claimant only once or not at all."  Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993).  Controlling weight is given when a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."  20 C.F.R. § 416.927(d)(2).  When a treating physician's opinion is not "well supported" the length and frequency of treatment is considered.  The more frequently examined and closely followed a claimant has been, the greater weight his attending doctor's opinion will carry.  The more evidence produced in support of a medical opinion and consistency with the entire record, generally the greater the weight it will receive regardless of whether the physician is a specialist.  20 C.F.R. §§ 416.927(d)(3)-(5).

**D.**    **The Three Step Evaluation Process**

Children seeking Social Security benefits based on a disability are subject to the three-step evaluation process outlined in 20 C.F.R. §§ 416.924 and 416.926a.  The ALJ makes the following three-step evaluation to determine whether a claimant under the age of eighteen is disabled, and thus, entitled to SSI benefits.  At step one, if claimant is engaged in substantial

gainful activity,[12] he is not disabled.  At step two, if claimant is not engaged in substantial gainful activity, then the examiner will determine whether the physical or mental impairment is severe. At step three, if the impairment is severe, the examiner will determine whether the impairment meets, medically equals, or functionally equals one in the Listings.  20 C.F.R. §§ 416.924(b)-(d).

If the child's impairment does not meet a Listing under step three above, the examiner determines whether the impairment functionally equals a Listing by evaluating the child's six domains of functioning.  The six domains of functioning are as follows:

1.      Acquiring and using information;

2.      Attending and completing tasks;

3.      Interacting and relating with others;

4.      Moving about and manipulating objects;

---

[12]   According to 20 C.F.R. §§ 416.924(a)-(b), the SSA will determine if the child is engaged in substantial gainful activity according to the guidelines as set out by 20 C.F.R. §§ 416.971 - 416.976.  See 20 C.F.R. § 416.924(b).

Substantial gainful activity is work activity that is both substantial and gainful:

(a) *Substantial work activity.* Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

(b) *Gainful work activity.* Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

(c) *Some other activities.* Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 416.972.

15

5.      Caring for yourself; and

6.      Health and physical well being.

20 C.F.R. § 416.926a(b)(1).

An impairment functionally equals a Listing if the child has "marked" limitations in at

least two domains, or an "extreme" limitation in at least one of the six domains of functioning.

20 C.F.R. § 416.926a(a).  A marked limitation is found where the "impairment(s) interferes

seriously with [a claimant's] ability to independently initiate, sustain, or complete activities. [A

claimant's] day to day functioning may be seriously limited when [the] impairment(s) limit

several activities.  'Marked' limitation also means . . . 'more than moderate' but 'less than

extreme.'"  20 C.F.R. § 416.926a(e)(2).  An extreme limitation is found where an impairment

"very seriously" interferes with a claimant's "ability to independently initiate, sustain, or

complete activities."  20 C.F.R. § 416.926a(e)(3).  Also, a claimant's everyday "functioning may

be very seriously limited when [the] impairment(s) limits only one activity or when the

interactive and cumulative effects of [the] impairment(s) limit several activities."  Id.  "'Extreme'

limitation . . . means . . . 'more than marked' . . . [a] rating we give to the worst limitation . . .

[h]owever, [it] does not . . . mean a total lack or loss of ability to function."  Id.

Thus, if the child is not engaged in substantial gainful activity, and has a severe

impairment, and the child's impairment meets or functionally equals a Listing, then the child will

be considered disabled and entitled to SSI benefits.  20 C.F.R. §§ 416.924(b)-(d).

**E.      ALJ O'Leary's Findings**

ALJ O'Leary found Claimant not disabled within the meaning of the Act.  (Tr. 27.)  The

ALJ compared Claimant's impairments with the listed impairments in Sections 112.02, 112.04

16

and 112.08, Organic Mental Disorders, Mood Disorders, and Personality Disorder, respectively. (Id. at 20.)  The ALJ determined that Claimant's impairments did not meet or medically equal any of these Listings.  (Id.)  In making this finding, the ALJ noted that: "The record indicates that most of the claimant's problems at school are related to absences rather than to behavior or hyperactivity.  He is able to function in an age appropriate manner in many areas and engages in activities of a normal teenager."  (Id.)

In making the functional equivalence determination required by the Act, the ALJ made a series of findings under the six domains.  (Id.)  The ALJ stated that determining limitations under the domains required a two-step process.  (Id.)  The first step is "determin[ing] whether there is an underlying medically determinable physical or mental impairment[]" and "[s]econd . . . I must evaluate the intensity, persistance, and limiting effects of the claimant's symptoms."  (Id.); see 20 C.F.R. § 416.929.  In analyzing the statements of intensity, persistence and limiting effects of such symptoms, whenever such statements are not corroborated by objective medical evidence, the ALJ must consider the credibility of the statements made in light of the entire record. (Tr. 21.)

The ALJ noted that:

> [t]he consultative examiners and the Trinitas Hospital physician noted that the claimant was uncooperative and had behavioral problems but they also found him with average to low average intelligence, and with intact concentration. . . . Because they made no mention whatsoever of what appears to be a very serous [sic] problem of parenting dysfunction and lack of stability, their conclusions are seriously questionable.

(Id. at 22.)  Also, the ALJ found, after examining the relevant evidence, that Plaintiff had been noncompliant with Claimant's treatment although she admitted that the treatment [medication] did improve his functioning.  (Id. at 24.)  The ALJ concluded that Claimant "is a very nice young

17

man but his main problem seems that he doesn't want to go and is not encouraged to go to school.  This is not a disability and his claim is denied." (Id. at 22.)

The ALJ found a marked limitation in one domain, less than marked limitations in four domains and no limitation in one domain.  (Id. at 23-27.)  In the acquiring and using information domain, ALJ O'Leary found that Claimant had a less than marked limitation.  (Id. at 23.) Specifically, the ALJ found this less than marked limitation due to the combination of several factors.  (Id.)  These factors included "slight problems in comprehension, vocabulary and in understanding and learning new material," as reported by Claimant's teacher, average intelligence findings by Dr. Chang and average to low average cognitive functioning findings by Dr. Cavanaugh, the lack of Claimant's promotion due to excessive absences, and Claimant's statements that he did not find school work difficult.  (Id.)

In the attending and completing tasks domain, the ALJ found that Claimant had a less than marked limitation.  (Id. at 23-24.)  The ALJ noted that although Claimant was diagnosed with ADHD, his mother was noncompliant with treatment.  (Id. at 24.)  Claimant's teacher noted "minor to moderate problems in this area," while Dr. Cavanaugh and Dr. Chang both noted that Claimant's concentration was intact and fair.  (Id.)

Third, in the interacting and relating with others domain, the ALJ found that Claimant's history of fighting with peers and family members as well as other behavioral problems showed that he had trouble following the rules.  (Id. at 24-25.)  The ALJ found Claimant was "uncooperative and defiant" in examinations by both Dr. Chang and Dr. Cavanaugh.  (Id. at 25.) Thus, the ALJ found a marked limitation in this area.  (Id.)

With regard to moving about and manipulating objects, the ALJ found no limitation, considering that Claimant was enrolled in a basketball summer camp program and played video games.  (Id.)  Also, regarding caring for himself, Claimant had a less than marked limitation since he has to be reminded by his mother to bathe and groom himself, but he does go out alone and can dress and feed himself.  (Id. at 26.)  Finally, regarding health and physical well-being, the ALJ found a less than marked limitation.  (Id. at 27.)  Claimant was on medication in the past but inconsistently since the fifth or sixth grades.  (Id.)

F.   **Analysis**

Plaintiff makes three arguments; one, that ALJ O'Leary's medical and functional equivalence determination is not supported by substantial evidence.  (Pl.'s Br. at 9-10.).   Next, Plaintiff argues that the ALJ failed to compare Claimant's impairments with the actual ADHD Listing (112.11).  (Id. at 9.)  Lastly, Plaintiff argues that the ALJ failed to compare the combined effect of Claimant's impairments with the Listings.  (Id. at 6-8.)

1.   **The Medical and Functional Equivalence Finding is Supported by Substantial Evidence**

ALJ O'Leary indicated that he considered Listings 112.02, 112.04, and 112.08.  (Tr. 20.) While it is not clear whether ALJ O'Leary considered the specific Listing, 112.11, for ADHD, such "magic words" are not required for disability consideration.  Burnett requires an ALJ to "set forth reasons for his decision . . . [a] conclusory statement . . . is beyond meaningful judicial review."  Burnett, 220 F.3d at 119-20.  Jones further elucidates the Burnett holding by noting that Burnett does not require an ALJ to use particular language, but mandates sufficient development

19

of the record and explanation of the findings to allow meaningful judicial review.  <u>Jones</u>, 364

F.3d at 505.

In the instant case, the ALJ referenced much of the evidence that was part of the record in

his determination that Claimant did not medically and functionally equal the Listings.  While the

ALJ did not specifically list the requirements of each Listing which he referenced in his decision,

the findings evaluate the psychiatric records, teacher evaluation, and testimonial evidence.

Regarding the medical equivalence determination, the ALJ states that there are no

medical findings that are the same or equal to the Listings and that Claimant's problems stem

from absences instead of hyperactivity.  (Tr. 20.)  The ALJ writes several paragraphs discussing

the testimony of Claimant and Plaintiff, medical evidence, and teacher evaluation.  (<u>Id.</u> at 21-22.)

ALJ O'Leary then concludes that the psychiatric evidence is questionable, Claimant's and

Plaintiff's testimonial evidence is not completely credible, and the fact that Claimant does not

want to, or is not encouraged to, go to school is not a disability.  (<u>Id.</u> at 22.)  The ALJ's

determination of a lack of medical equivalence and consideration of the medical evidence is

supported by substantial evidence.

In the functional equivalence determination, in the domain of interacting and relating to

others, the ALJ found that Claimant had a marked limitation.  (Tr. 24.)  The ALJ supported this

determination by citing evidence of Claimant's "history of behavioral problems . . . difficulty

following rules and respecting authority figures . . . [and] . . . that he was uncooperative and

defiant [with both examiners]."  (<u>Id.</u> at 25.)  In the area of Claimant's ability to care for himself

and the domain of Claimant's health and physical well-being, ALJ O'Leary found less than

marked impairments.  (<u>Id.</u> 25-27.)  Specifically, regarding health and physical well-being, the

ALJ cited the psychiatric evaluations, pointing to the fact that Claimant had not been on medication consistently since the fifth or sixth grade. (Id. at 27.)

Similarly, in the domain of acquiring and using information, the ALJ found a less than marked limitation.  (Id. at 23-24.)  The ALJ cites Claimant's own testimony that he did not find school difficult, the teacher evaluation, and both psychiatric evaluations, which found Claimant to be between average and low average intelligence.  (Id. at 23.)  In the domain of attending and completing tasks, ALJ O'Leary found less than marked limitations, citing to Plaintiff's lack of compliance with treatment for Claimant's ADHD, the teacher evaluation which noted mild to moderate problems, and reports by the psychiatrists which stated that Claimant had fair or intact concentration.  (Id. at 23-24.)  Finally, the ALJ found no limitation in the domain of moving about and manipulating objects, citing to Claimant's testimony that he played basketball and video games.  (Id. at 25.) The ALJ's functional determination is supported by substantial evidence.

### 2.    The ALJ's Listing Consideration is Supported by Substantial Evidence

Plaintiff argues that within the ALJ's medical equivalence determination, he did not mention any consideration of Claimant's impairments in light of ADHD, Listing 112.11. However, this Court finds that the ALJ's determination is supported by substantial evidence. Although the ALJ did not specifically mention a certain Listing, his consideration of the record illustrates analysis of Claimant's impairments in light of the Listings.

The Third Circuit has stated that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. . . . [T]he ALJ considered

the appropriate factors in reaching the conclusion that Jones did not meet the requirements for

any Listing, including Listing 3.02(A)."  Jones, 364 F.3d at 505.

The claimant in Jones challenged the ALJ's step three determination alleging that the ALJ

failed to find claimant disabled under Listing 3.02(A).[13]  At step three, the ALJ noted the

following, "after 'carefully compar[ing] the claimant's signs, symptoms, and laboratory findings

with criteria specified in all of the Listings of Impairments,' 'the claimant's impairments do not

meet or equal the criteria established for an impairment shown in the Listings.'"  Id. at 503

(quoting Administrative Transcript at 13).  The Third Circuit found that the ALJ's decision was

supported by substantial evidence and noted that the ALJ considered evidence relating to

"chronic obstructive and restrictive lung disease . . . [and] pointed to a lack of pulmonary

complications, and a finding that claimant's lungs were clear. . . .  The ALJ noted that claimant's

medical history showed no frequent hospitalization or emergency treatments."  Id. at 505

(quoting Administrative Transcript at 13-14).  This discussion satisfied the Burnett standard and

provided sufficient explanation for meaningful review.  Id.

Similarly, this Court finds that the ALJ's step three determination in this case, was

supported by substantial evidence and allows for meaningful review.

Plaintiff argues that because the ALJ found Claimant to suffer from severe ADHD at step

two that the ALJ should have included a comparison of Claimant's impairments in step three to

the specific ADHD Listing.  (Pl.'s Br. 9.)  Plaintiff's argument fails since the ALJ specifically

considered many of the mental examinations, the evaluation from Claimant's teacher and

weighed both Claimant's testimony and Plaintiff's testimony.  The ALJ found that the evidence

---

[13] Listing 3.02(A) addresses "[c]hronic obstructive pulmonary disease."   20 C.F.R. Part
404, Subpart P, Appendix 1, § 3.02(A).

fails to "show signs or findings that are the same or equivalent to those of any listed impairment, including Section 112.02, 112.04 or 112.08." (Tr. 20.)  This statement by the ALJ, coupled with the detailed consideration of much of the evidence, satisfies the substantial evidence requirement.

Although the ALJ points specifically to three Listings, he does consider all of the impairments as indicated by the use of the word "any."  This necessarily includes the ADHD Listing.  The decision supports the determination that Claimant's impairments do not meet or equal the Listings.  Furthermore, the ALJ considered Listings that he considered relevant to Claimant's impairments—Listings 112.02 Organic Mental Disorders, 112.04 Mood Disorders, and 112.08 Personality Disorders.

The instant case is similar to Garcia where a child was found to have severe ADHD at step two but did not meet, medically equal or functionally equal the Listings at step three. Garcia, 260 F. App'x at 437.  Garcia claimed, as Plaintiff does here, that the ALJ failed to explain his conclusion that the child's impairment did not qualify as a listed impairment.  Id. The ALJ considered many records, reports, and plaintiff's testimony, which the ALJ found not credible.  Id. at 437-38.  The ALJ in Garcia relied on these records, reports, and testimony and such evidence supported his finding that the claimant's impairment did not met or equally *any* of the listed impairments.[14]  Id.  However, the Court affirmed the district court judgment below, which affirmed the Commissioner's non-disability determination.  Id. at 438.

In this case, the ALJ considered the appropriate evidence required for a finding of disability.  When the decision is read as a whole, the ALJ clearly discussed the psychiatric evaluations, the evaluation from Claimant's teacher and weighed Claimant's testimony and

---

[14]  It is not clear, in the Third Circuit opinion, whether or not the ALJ cited some Listings and did not cite the specific ADHD Listing or did not cite any Listings at all.

Plaintiff's testimony.  (Tr. 17-27.)  That discussion, throughout the opinion, satisfies <u>Burnett</u>.  As in <u>Jones</u>, consideration of the appropriate evidence, that relates to Claimant's impairments, allows for meaningful review.  Thus, the ALJ's decision is supported by substantial evidence, although he did not specifically cite to the ADHD Listing.

### 3.      The ALJ Did Not Fail to Combine and Compare

 Plaintiff's third argument that ALJ O'Leary failed to compare the combined effects of Claimant's impairments to the Listings fails.  Plaintiff urges this Court to consider the lack of comparison of the combined effect of Claimant's "ADHD, behavior disorder and Global Assessment of Functioning ("GAF") of 50."[15]  (Pl.'s Br. 8.)  This Court finds that the ALJ's explanation at step three demonstrates comparison of the combined effect of Claimant's impairments and thus rejects Plaintiff's argument.

Generally combination cases, such as the case cited in Plaintiff's brief, combine impairments affecting a wide range of body systems.  <u>E.g.</u>, <u>Torres</u> 279 F. App'x. 149, 152 (3d Cir. 2008) (Third Circuit remanded the case and required the ALJ to analyze the severity of the combination of claimant's impairments, which included, "diabetes, Hepatitis C, back problems, headaches, chronic bronchitis, left-eye blindness, glaucoma, depression, anxiety, bipolar disorder, and personality disorder."); <u>Diaz  v. Comm'r of Soc. Sec.</u>, 577 F.3d 500, 502,

---

[15]   Dr. Chang noted in his examination of Claimant that Claimant had a current GAF of 50 and a high of 51 in the past year.  (Tr. 136.)

GAF occurs in the Axis V diagnosis of an individual. "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning."   <u>DSM-IV</u> at 32.  The GAF scale takes into account only psychological, social, and occupational functioning, divided into ten 10-point ranges.  <u>Id.</u>  A GAF of 50 falls within the 41-50 range characterized as "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." <u>Id.</u> at 34.

504-05 (3d Cir. 2009) (ALJ required to analyze claimant's obesity and arthritis impairments, in combination with claimant's other impairments, including: "diabetes, hypertension, asthma, back disorder, degenerative joint disease of the knee, and adjustment disorder.").

Here, Claimant suffers only from mental impairments, which impact a single body system.  This case is distinguishable from cases where several body systems are affected and multiple impairments manifest themselves in many different ways.  Furthermore, Plaintiff's argument requires a comparison of the combined effects of two mental disorders and a GAF assessment, which itself is an assessment of psychological, social, and occupational functioning. Therefore, a combination of the mental disorders and an assessment of their effect on functioning do not require the ALJ to consider any new information that he had not already considered in his decision.

ALJ O'Leary specifically stated in his decision that "claimant does not have an impairment or *combination* of impairments that meets or medically equals one of the listed impairments."  (Tr. 20 (emphasis added).)  ALJ O'Leary stated that "No treating physician has mentioned findings equivalent in severity to any listed impairment, nor does the evidence show signs or findings that are the same or equivalent to those of any listed impairments."  (Id. at 20.) In this statement, it is evident that the ALJ considered all of the evidence presented.  ALJ O'Leary stated that no findings, meaning that he considered the entire record, are equivalent to the Listings.  See Lopez v. Comm'r of Soc. Sec., 270 F. App'x 119, 121 (3d Cir. 2008) (noting that Burnett does not require an ALJ to use specific language in his decision as long as the decision allows for meaningful review).

25

In addition to citing the lack of medical findings and the determination that the Claimant does not have an impairment or combination of impairments that meet or medically equal the listed impairments, the ALJ also considered the testimonial evidence and school records. (Tr. 20.)  After stating his step three analysis, ALJ O'Leary stated that "[t]he record indicates that most of the claimant's problems at school are related to absences rather than to behavior or hyperactivity."   (Id.)  ALJ O'Leary recognized both of the impairments and stated that Claimant's problems are not related to either impairment.  Surely, Plaintiff's argument to combine and compare can not insist that the ALJ should have used the words "behavior *and* hyperactivity."  Such specificity by the ALJ is not required.   It is clear by this statement and the former statements by the ALJ that his analysis in step three was reasoned and supported by substantial evidence.

## **CONCLUSION**

Since substantial evidence weighs in favor of the ALJ's conclusion, remand or reversal is not appropriate.  See Lopez, 270 F. App'x at 122 (plaintiff claimed that remand was necessary due to ALJ's failure to consider her evidence in light of a specific listing, the Third Circuit found the ALJ's failure to discuss specific listings was not reversible error since the ALJ "analyzed all the probative evidence and explained his decision sufficiently to permit meaningful review").

In this case, the ALJ's decision considered the appropriate medical, non-medical, and testimonial evidence and also assessed the credibility of the evidence.  The ALJ relied on the testimony and credibility of both Plaintiff and Claimant and found them not to be credible.  See Wilson v. Astrue, 331 F. App'x 917, 920 (3d Cir. 2009) (a credibility determination is valid where the ALJ fully explains his determination and the determination is supported by substantial

evidence).  Here, the ALJ explained his reasons for discrediting the testimony of Plaintiff and

Claimant, while discussing Claimant's participation in a basketball summer program and

Plaintiff's noncompliance with Claimant's prescribed course of treatment, among other things.

For the foregoing reasons, this Court finds that substantial evidence supports the

Commissioner's determination that the claimant is not disabled under the Listings.  The

Commissioner's decision is affirmed.

Date: December 11, 2009


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.D.J.